UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ERIC GEAROD SCARLETT,

                    Petitioner,

vs.                                    Case No. 3:07-cv-189-J-34TEM

WALTER A. MCNEIL,
etc.; et al.,

                    Respondents.

_____

## ORDER OF DISMISSAL WITH PREJUDICE[1]

## A. Status

Petitioner Eric Gearod Scarlett, an inmate of the Florida penal system who is represented by counsel, initiated this action by filing a Petition for Writ of Habeas Corpus (Petition) (Doc. #1) pursuant to 28 U.S.C. § 2254 on March 19, 2007. He also filed a Corrected Memorandum of Law in Support of his Petition (Memorandum of Law) (Doc. #11) and a Notice of Filing Appendix (Doc. #12).[2]

_____

[1] This is a "written opinion" under § 205(a)(5) of the E-Government Act and therefore is available electronically. However, it has been entered only to decide the matters addressed herein and is not intended for official publication or to serve as precedent.

[2] The Court will refer to Petitioner's exhibits as "Pet. Ex."

Petitioner challenges a 1991 state court (Duval County, Florida) judgment of conviction for armed robbery on three grounds: (1) the state court, in dismissing Scarlett's second motion for post conviction relief as successive, arbitrarily refused to apply Florida Rule of Criminal Procedure 3.853(b)(2) when the motion was based on new DNA testing which had been unavailable at the time of the first motion; (2) the state court's arbitrary refusal to accord Scarlett the right to litigate his DNA motion under Florida Rule of Criminal Procedure 3.853 denied him the procedural and substantive due process guaranteed to him under the Fourteenth Amendment of the United States Constitution; and (3) Scarlett is actually innocent.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year statute of limitations on petitions for writ of habeas corpus. Specifically, 28 U.S.C. § 2244 provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

>> (C) the date on which the
> constitutional right asserted was
> initially recognized by the Supreme
> Court, if the right has been newly
> recognized by the Supreme Court and
> made retroactively applicable to
> cases on collateral review; or
>
>> (D) the date on which the factual
> predicate of the claim or claims
> presented could have been discovered
> through the exercise of due
> diligence.
>
>> (2) The time during which a properly filed
> application for State post-conviction or other
> collateral review with respect to the
> pertinent judgment or claim is pending shall
> not be counted toward any period of limitation
> under this subsection.

28 U.S.C. § 2244(d). Respondents contend that Petitioner has not complied with the one-year period of limitations set forth in 28 U.S.C. § 2244(d). See Respondents' Answer to Habeas Petition (Response) (Doc. #22).[3] Petitioner disagrees and has filed a reply brief. See Petitioner Scarlett's Reply to State's Answer (Reply) (Doc. #32), filed June 13, 2008. On January 21, 2010, this Court ordered the Respondents to file a supplemental appendix, which has been filed. See Notice of Filing Supplemental Exhibits (Resp. Supp. Ex.) (Doc. #39), filed January 22, 2010. This case is now ripe for review.

---

[3] The Court will refer to Respondents' exhibits as "Resp. Ex."

## **B. Procedural History**

The following procedural history is relevant to the one-year limitations issue. Eric Gearod Scarlett was charged with armed robbery, arising out of the robbery of a convenience store in Jacksonville, Florida, on November 9, 1990. Resp. Ex. A at 22, Amended Information, filed March 1, 1991. After a trial, see Resp. Ex. B, Transcript of the Jury Trial Proceedings (Tr.), the jury found Petitioner guilty as charged. Resp. Ex. A at 61, Verdict. On September 16, 1991, the trial court adjudicated Petitioner guilty and sentenced him to life imprisonment. Resp. Ex. B at 118-29, Judgment.

Petitioner appealed his conviction, raising two issues: (1) the show-up was impermissibly suggestive, and (2) the prosecutor impermissibly commented at the trial on April 17, 1991. On October 8, 1992, the appellate court per curiam affirmed Petitioner's conviction and sentence without issuing a written opinion, see Scarlett v. State, 605 So.2d 1269 (Fla. 1st DCA 1992), and the mandate issued on October 26, 1992.[4] Rehearing was denied on November 24, 1992. See Scarlett v. State, 608 So.2d 26 (Fla. 1st

---

[4] See the online docket at the website for the First District Court of Appeal (http://www.1dca.org). The Respondents provided this website to the Court, see Response at 4 n.1, 5 n.2, 6 n.4; however, in the future, they shall submit the proper documentation in accordance with the Order to Show Cause and Notice to Petitioner. See Doc. #14, filed July 9, 2007.

DCA 1992). Petitioner did not seek review in the United States Supreme Court.

Nine years later, on June 21, 2001, pursuant to Florida Rule of Criminal Procedure 3.853,[5] Petitioner filed a Motion for Release of Evidence for DNA Testing seeking the production of the ski mask worn by the armed robber on November 9, 1990. The State opposed the motion. Following a January 17, 2002 evidentiary hearing, the trial court granted the motion for DNA testing on April 25, 2002, and ordered the ski mask (that had been held in evidence from the trial) released to Dr. Sinha for DNA testing. See Resp. Supp. Ex. 1. The results of the first DNA test were reported on July 13, 2002. See Pet. Ex. A (First DNA Report).

On January 6, 2004, Petitioner, through counsel, filed a motion for post conviction relief pursuant to Florida Rules of Criminal Procedure 3.850 and 3.853. See Resp. Supp. Ex. 2. The trial court denied the motion on January 27, 2004, concluding that "[t]he motion on its face shows that there is no reasonable probability that the movant would have been acquitted or would have received a lesser sentence if the DNA evidence had been admitted at trial." Resp. Supp. Ex. 3. Petitioner filed a motion for rehearing on February 9, 2004, and a corrected motion on February

_____

[5] Florida Rule of Criminal Procedure 3.853 "provides procedures for obtaining DNA (deoxyribonucleic acid) testing under sections 925.11 and 925.12, Florida Statutes." Fla. R. Crim. P. 3.853(a).

5

10, 2004, which was denied on February 13, 2004. Petitioner

appealed the denial on March 19, 2004, and on July 15, 2004, the

appellate court affirmed the denial of the motion, <u>see</u> <u>Scarlett v.</u>

<u>State</u>, 892 So.2d 1019 (Fla. 1st DCA 2004).[6] The court also denied

Petitioner's motion for rehearing on September 2, 2004, and the

mandate issued on September 20, 2004.[7]

On August 18, 2005, Petitioner, through counsel, obtained a

sworn statement from Dr. Sinha, <u>see</u> Pet. Ex. B, in which Dr. Sinha

explained that the state trial court, in its order denying the

first motion for post conviction relief, <u>see</u> Resp. Supp. Ex. 3,

misinterpreted the test results from the First DNA report. Based

on Dr. Sinha's opinion, Petitioner, through counsel, chose to have

additional testing done on the ski mask. <u>See</u> Pet. Ex. C, Forensic

Test Results #3 (Second DNA Report), dated March 2, 2006. "Fearing

that the Circuit Court would again deny an evidentiary hearing to

allow the DNA expert an opportunity to explain the meaning and

scientific significance of the new Second DNA Test[]" (Petition,

Statement of Facts at 14), Dr. Sinha, on March 28, 2006, provided

---

[6] Contrary to Petitioner's assertion, <u>see</u> Petition, Statement
of Facts at 10; Pet. Ex. A, Defendant Scarlett's Second Motion for
Post-Conviction Relief Pursuant to Florida Rules of Criminal
Procedure 3.850 and 3.853 Based on <u>New</u> DNA Testing at 9, there is
no dissenting opinion by Judge Benton. <u>See</u> <u>Scarlett</u>, 892 So.2d
1019.

[7] <u>See</u> http://www.1dca.org.

a second, supplemental sworn statement, explaining the test results in the Second DNA Report. <u>See</u> Pet. Ex. D.

On May 28, 2006, Petitioner, through counsel, filed a second motion for post conviction relief pursuant to Florida Rules of Criminal Procedure 3.850 and 3.853 based on the results of the Second DNA Test. <u>See</u> Notice of Filing Appendix (Doc. #12). Dismissing the motion on June 12, 2006, the trial court stated in pertinent part:

> This is a second successive Motion for Post Conviction Relief which fails to allege new or different grounds for relief, as described in Florida Rule of Criminal Procedure 3.850(f). The motion alleges no new or different grounds for relief; it merely alleges that the defendant's DNA expert disagrees with this Court's (and the First District Court of Appeal's) ruling on an issue of law.

Pet. Ex. D. On December 15, 2006, the appellate court affirmed the dismissal, <u>see</u> <u>Scarlett v. State</u>, 944 So.2d 990 (Fla. 1st DCA 2006), and the mandate issued on January 3, 2007.[8]

A few months later on March 19, 2007, Petitioner, through counsel, filed a federal Petition in this Court. In support of the Petition, Petitioner has submitted additional DNA test results. <u>See</u> Notice of Supplemental Authority (#36), filed August 28, 2008, Forensic Test Results Report #4, dated June 16, 2008.

---

[8] <u>See</u> http://www.1dca.org.

## C. Findings of Fact and Conclusions of Law

As previously noted, Respondents claim that Petitioner has not complied with the one-year period of limitations set forth in 28 U.S.C. § 2244(d). Specifically, Respondents argue that, because Petitioner's conviction became final prior to the enactment of the AEDPA, he had until April 24, 1997, to timely file his federal habeas petition. See Response at 8 (citations omitted). Thus, they conclude that his federal Petition, filed on March 19, 2007, is untimely. Without more, such an argument would be correct, see Ferreira v. Sec'y, Dep't. of Corr., 494 F.3d 1286, 1289 n.1 (11th Cir. 2007) ("The limitations period would have ended on April 24, 1997, the anniversary date of the triggering event, which was AEDPA's effective date."), cert. denied, 129 S.Ct. 1033 (2009); however, this case presents a more unique state court procedural history.

First, Respondents correctly point out that DNA testing was available in Florida at the time of Petitioner's 1991 trial and that "even the more powerful type of DNA testing - STR DNA - testing was available in 1996." Response at 9; see Green v. McDonough, No. 6:06-cv-1094-Orl-19JGG, 2007 WL 704930, at *3 n.2 (M.D. Fla. Mar. 2, 2007). Thus, Respondents contend that, even if the availability of STR DNA testing restarted the one-year clock, Petitioner had only one year from 1996 to timely file his federal Petition. See Response at 10.

Petitioner acknowledges that he waited until June 21, 2001, to file the motion for DNA testing because "Florida's DNA testing rule, Rule 3.853, had been proposed but not adopted." Reply at 4. However, "Petitioner did not have to wait until the State of Florida enacted a criminal rule of procedure dealing with DNA testing before he was allowed to file a Rule 3.850 motion or a federal habeas petition challenging his conviction[] based on the DNA evidence." Green, 2007 WL 704930, at *3 (footnote omitted).

Petitioner also asserts that, when he filed his motion for DNA testing in 2001, "the State fought hard to prevent Scarlett from obtaining release of the evidence for DNA testing[,]" Reply at 4, and therefore, "that impediment alone excuses the delay." Id. at n.1. Petitioner's impediment argument fails since Respondents' mere opposition in state court to his request for DNA testing is not the result of "illegal state action." See Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1216 (11th Cir. 2000) (stating "in the event of illegal state action preventing the petitioner from filing, the limitation period does not begin until after the state impediment is removed").

Additionally, Petitioner contends that the federal Petition is timely under 28 U.S.C. § 2244(d)(1)(D), which permits filing within one year from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Reply at 1-2. Upon review of the record,

including the facts relating to the various results of the DNA
testing, it is evident that "the date on which the factual
predicate of the claim or claims presented could have been
discovered through the exercise of due diligence" was July 13,
2002, the date of the First DNA Report. It was at this time that
Petitioner became aware that the ski mask contained DNA from
Scarlett as well as from an unknown donor.[9] Any argument that the
factual predicate of Petitioner's claim was still developing as the
subsequent DNA testing was being conducted by Dr. Sinha is
unavailing. See Green, 2007 WL 704930, *2 ("To the extent that
Petitioner argues that the one-year period is governed by section
2244(d)(1)(D) because the alleged DNA evidence is 'newly
discovered' evidence that would have exonerated him, his argument
is flawed. . . . Since the factual predicate of this [DNA] claim
was known by Petitioner many years prior to the expiration of the
one-year period of limitation, it was not 'newly discovered.'").

In asserting their untimeliness argument, Respondents advise
that "there is no case law from the Eleventh Circuit addressing
timeliness when a motion for DNA testing is involved[] in a Florida

---

[9] Interpreting the First DNA Report, Dr. Sinha stated that
"the defendant, whose DNA is present, is present at a very, very
small amount, and somebody else's DNA is present as the majority
amount . . . ." Pet. Ex. B at 14. He noted that "there is
somebody other than Mr. Scarlett who has much more amount of DNA
than possibly Mr. Scarlett's DNA present in a mixture." Id. at 15.
He opined that "the small amount of DNA present could have been
from [Scarlett's] . . . casual contact with the ski mask in the
courtroom." Id. at 17.

case . . . ." Response at 10. However, since the filing of their Response, the United States Court of Appeals for the Eleventh Circuit has addressed the issue of the running of the statute of limitations where a motion for DNA testing has been filed. See Brown v. Sec'y for the Dep't of Corr., 530 F.3d 1335 (11th Cir. 2008). Recognizing that a proceeding brought pursuant to Florida Rule of Criminal Procedure 3.853 involves an application for discovery only, the Court concluded: "While a properly filed Rule 3.850 motion seeking to set aside a conviction would undoubtedly toll AEDPA's limitations period during its pendency, it is equally as well-settled that a discovery motion does not." Id. at 1338 (citations omitted). Thus, Petitioner's motion for DNA testing, filed June 21, 2001, does not toll the running of the one-year limitations period.

However, the Eleventh Circuit Court also addressed a Rule 3.853 discovery motion as it may relate to 28 U.S.C. § 2244(d)(1)(D), stating: "If such motions produce newly discovered exculpatory evidence, AEDPA grants the movant a year from that discovery, subject to tolling while related state collateral attacks are advanced, to challenge [his] conviction in federal habeas proceedings." Id. (citing 28 U.S.C. § 2244(d)(1)(D)). Thus, assuming arguendo that the state court's granting of Petitioner's Rule 3.853 motion for DNA testing produced "newly

discovered exculpatory evidence"[10] (see First DNA Report, dated July
13, 2002), Scarlett would have had one year from that July 13, 2002
discovery to challenge his armed robbery conviction in federal
court.

Indeed, Petitioner, who was represented by counsel at the
time the first DNA testing was completed, was aware of the results
of the first DNA testing on or about July 13, 2002.  See Pet. Ex.
A.  Thus, Petitioner had one year from July 13, 2002, to file the
federal petition (July 13, 2003).  His Petition, filed by counsel
on March 19, 2007, is due to be dismissed as untimely unless he can
avail himself of one of the statutory provisions which extends or
tolls the limitations period.

The one-year limitations period ran for five hundred and
forty-two (542) days until January 6, 2004, when Petitioner,
through counsel, filed a motion for post conviction relief pursuant
to Florida Rules of Criminal Procedure 3.850 and 3.853.  See Resp.

---

[10] Five cuttings from various parts of the ski mask (labeled
A, B, C, D, E) were tested for DNA.  Pet. Ex. A, First DNA Report.
The results of the first DNA test showed that three of the five
cuttings (A, C, D) produced "no result due to insufficient or
excessively degraded DNA."  Id.  Two cuttings (B and E) showed
results.  Id.  Results from cutting B (nose bridge area) were "not
consistent" with Scarlett's reference[d] blood sample, thus
excluding Scarlett as the DNA donor in cutting B.  However, with
respect to cutting E (mouth area), the test results reflected:  six
loci from cutting E showed "no result" or "not tested due to low
quantity of DNA[,]" and eight loci showed a mixture that included
Scarlett's DNA profile at these loci.  Id.  Thus, Scarlett was a
possible donor to the DNA mixture at cutting E.  See Response at 4;
Pet. Ex. B at 14 (stating that "the defendant, whose DNA is
present, is present at a very, very small amount, and somebody
else's DNA is present as the majority amount . . . .").

Supp. Ex. 2. In the motion, Petitioner stated that the motion "followed in a timely manner under Rule 3.853."[11]  _Id_. at 6. However, at the time that he filed this state court motion, the federal one-year limitations period had already expired.  _See Tinker v. Moore_, 255 F.3d 1331, 1334-35 (11th Cir. 2001) (holding that, even though Florida law allows a prisoner two years to file a Rule 3.850 motion, the prisoner must actually have a properly filed state court petition or motion pending within the one-year period in order to toll the limitations period), _cert_. _denied_, 534 U.S. 1144 (2002); _Webster v. Moore_, 199 F.3d 1256, 1259 (11th Cir. 2000) (per curiam) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period.  A state-court petition like [Petitioner]'s that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."), _cert_. _denied_, 531 U.S. 991 (2000).

Even assuming arguendo that the one-year limitations period did not begin to run until after the resolution of Petitioner's first motion for post conviction relief (when mandate issued on September 20, 2004), the Petition is still untimely.  After September 20, 2004, Petitioner conducted additional DNA testing.  Then, on May 28, 2006, six hundred and fifteen (615) days later, he

_____

[11] Florida Rule of Criminal Procedure 3.853 states that "[t]he motion for postconviction DNA testing may be filed or considered at any time following the date that the judgment and sentence in the case becomes final."  Fla. R. Crim. P. 3.853(d).

13

filed a second successive motion for post conviction relief, <u>see</u> Notice of Filing Appendix (Doc. #12), which the trial court denied, stating that he had not alleged new and different claims. <u>See</u> Pet. Ex. D.  Although Petitioner filed his federal Petition within months of the resolution of his second Rule 3.850 motion, at the time that he filed that state court motion, the federal one-year limitations period had already expired.  <u>See</u> <u>Tinker</u>, 255 F.3d at 1334-35.  Thus, the Petition, filed March 19, 2007, is untimely filed and due to be dismissed unless Petitioner can establish that equitable tolling of the statute of limitations is warranted.

The United States Supreme Court has established a two-prong test for equitable tolling, stating that a petitioner "must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing." <u>Lawrence v. Florida</u>, 549 U.S. 327, 336 (2007); <u>see</u> <u>Downs v. McNeil</u>, 520 F.3d 1311, 1318 (11th Cir. 2008) (stating that equitable tolling "is a remedy that must be used sparingly"); <u>see</u> <u>also</u> <u>Brown v. Barrow</u>, 512 F.3d 1304, 1307 (11th Cir. 2008) (noting that the Eleventh Circuit "has held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence.") (citation omitted).  The burden is on Petitioner to make a showing of extraordinary circumstances that are both beyond his control and unavoidable with diligence, and this high hurdle will not be easily surmounted.  <u>Howell v. Crosby</u>, 415 F.3d 1250 (11th Cir. 2005), <u>cert</u>. <u>denied</u>, 546 U.S. 1108

(2006); <u>Wade v. Battle</u>, 379 F.3d 1254, 1265 (11th Cir. 2004) (citations omitted).  Here, Petitioner simply has not met the burden of showing that equitable tolling is warranted.

Petitioner also seeks habeas relief arguing that he is innocent of the crime and that, with the new DNA evidence, no jury would convict him of the armed robbery since there would be reasonable doubt as to whether he wore the ski mask during the robbery.  He contends that the donning of the ski mask at the trial, <u>see</u> Tr. at 312, was just enough time to have his DNA show up in the DNA test results.  <u>See</u> Pet. Ex. B at 17.

The evidence at the trial established the following facts.  At approximately 1:00 a.m. on November 9, 1990, two masked men robbed a Gate Petroleum convenience store.  Tr. at 299, 301.  One of the robbers, armed with a gun, was wearing a ski mask, and the other robber was wearing a bandanna that kept falling off his face.  <u>Id</u>. at 301.  A third man, the get-away driver, was driving a white Honda Civic.  <u>Id</u>. at 345-46.

The store clerk, Catherine Law, described the ski-masked robber with the gun as "six foot tall, very skinny" with distinctively long arms, "dark, dark eyes" and "olive complected." <u>Id</u>. at 301, 303.  She could not positively identify Scarlett as the man who was wearing the ski mask, only that Scarlett resembled that robber.  <u>Id</u>. at 307.  Ms. Law testified that Scarlett's hands "look like the same long skinny hands that held the gun."  <u>Id</u>. at 308. She further confirmed that Scarlett is the same height and has "the

same skinny build" and "olive skin tone" as the ski-masked robber. _Id_. at 308. As Scarlett showed Ms. Law his hands and donned the ski mask in court before the jury, Ms. Law testified that Scarlett "looks like the same man that was there that night." _Id_. at 312. Additionally, she described the ski mask as "bunched up in the back" on the night of the robbery, so that the robber's "braided [pony]tail" could be seen. _Id_.

Within hours of the robbery, Ms. Law positively identified the robber with the bandanna. _Id_. at 315-17. Additionally, when the police brought Scarlett for a show-up identification, Ms. Law told them that he fit the description of the ski-masked robber that she had given to the police at the time of the robbery: tall, very slender, distinctively long arms, "long skinny fingers," olive complected hands, similar brown eyes and "the same tail that was poking out of the ski mask." _Id_. at 317-19. She told the police that he had the same characteristics as the robber. _Id_. On cross-examination, however, she acknowledged: "I can't make a positive identification." _Id_. at 340.

A customer driving into the gas station, Troy Pittman, saw two males running out of the store and noticed that one of the men was wearing a mask. _Id_. at 345-46. In his car, Pittman chased the white Honda at speeds of one hundred miles per hour. When someone in the white Honda began shooting towards him, Pittman rammed the rear of the Honda, sending it into a ditch. _Id_. at 347-48. Pittman affirmed that the ditch is "always" muddy and full of

water.  Id. at 351.  Pittman could not identify any of the persons who were in the Honda.  Id. at 351.

Rachael Highsmith testified that, at approximately 2:00 a.m. on November 9, 1990, she and a co-worker saw Eric Scarlett, whom she had met, and Keith Wilson walking; they flagged her down and asked for a ride.  Id. at 353-54, 356.  Highsmith noticed that Scarlett and Wilson were wet.  Id. at 356.  Additionally, she described them as acting "[s]ort of" out of the ordinary and "just in a hurry."  Id. at 358.  Highsmith further testified that she was familiar with Keith Robbins' car, a white Honda Civic, and that she later saw it in the ditch.  Id. at 359.

Officer Krivensky testified that, on November 9, 1990, he was assigned to respond to an armed robbery call on New Kings Road. Id. at 362.  En route to the location, he diverted to the place where the Honda had been found.  Id. at 363.  Looking inside the Honda that had been abandoned in the ditch, he found a ski mask. Id. at 365.  The persons who had been in the car were not present. Id. at 363.  Some time later, Krivensky arrested Scarlett and Wilson at Scarlett's home and searched the house for the gun used in the robbery.  Id. at 491.  In a closet hamper, he saw two pairs of wet blue jeans.  Id.  Additionally, he testified that Mrs. Scarlett handed him Scarlett's wallet, which was wet.  Id. at 492.

Keith Wilson (the suspect identified as the robber wearing the bandanna) testified that he, Robbins and Scarlett robbed the Gate gas station.  Id. at 425.  He confirmed that Scarlett wore the ski

17

mask and had the gun which belonged to Robbins.  <u>Id</u>. at 427.
According to Wilson, it was Robbins who shot at Pittman's car
during the car chase.  <u>Id</u>. at 430.  He also explained that, when
the Honda was rammed into the ditch, he and Scarlett fled together.
<u>Id</u>.

Keith Robbins (the get-away driver who owned the white Honda
Civic) testified that Wilson and Scarlett went into the store and
robbed the clerk.  <u>Id</u>. at 457.  He testified that he owned the gun
used by Scarlett during the robbery, <u>see id</u>. at 458, 467, and that
the mask, worn by Scarlett during the robbery, belonged to Robbins'
roommate.  <u>Id</u>. at 467.  Robbins acknowledged that he fired the gun
out the window of his car, <u>id</u>., and that he gave a written
confession that same day.  <u>Id</u>. at 469.

In denying the motion for judgment of acquittal, the trial
judge stated:

> The evidence as a matter of fact is not just
> prima facie evidence sufficient to go to the
> jury, it's almost overwhelming thus far.  We
> have the victim in the case who
> circumstantially identified the defendant by
> certain features. . . .
>
> We have established by -- State has
> established by the eye witness -- eye
> witnesses, that is, two co-defendants that the
> one of whom went inside the Gate store with
> the defendant and said the defendant had the
> weapon and that they committed the robbery.
> The other co-defendant said that he drove them
> to that place and he stayed in the car and he
> saw them running out together.  Both of them
> said Eric Scarlett, this defendant, was the
> one who committed the robbery with the other

> co-defendant.  Evidence is far beyond prima
> facie sufficient to go to the jury.

Id. at 496.

The defense called Jacksonville Sheriff's Office Detective Lott, who wrote the general offense report containing the victim's description of the ski-masked robber as being a white male.  Id. at 524-26.  The defense also called Jacksonville Sheriff's Office Detective Lumpkin, the lead detective, who testified that the victim initially described the robber as being a white male.  Id. at 577.

Additionally, the defense called Maudene Topolski, a bartender at Dean's Chuck Wagon.  Id. at 594.  Describing the bar as a "red neck bar," she testified that Scarlett came into the bar one night with two white men about 8:30 to 8:45 p.m.  Id. at 594-600.  She remembered this because Scarlett is the only black man who ever came into the bar and stayed.  Id. at 599.  He stayed until the bar closed at 2:00 a.m.  Id. at 600.  She could not recall the exact date, but noted "[i]t had to be the first part of November . . . ." Id. at 602-03.  Her husband, David Topolski, was also at the bar that night, but he could not remember the exact date.  Id. at 604, 626, 646.

Thus, the jury found Petitioner Scarlett guilty of armed robbery based on the testimonies of Keith Wilson and Keith Robbins; the testimony of the victim and her identification of Scarlett based on such characteristics as his height, slim build,

distinctively long arms, dark eyes, long skinny hands, braided ponytail and olive skin tone; and other circumstantial evidence (such as Pittman's affirmation of the ditch as always being muddy and full of water, Highsmith's giving Scarlett and Wilson a car ride in the early morning hours and noticing that they were wet and in a hurry and Officer Krivensky's seeing two pairs of wet blue jeans at Scarlett's house and obtaining Scarlett's wet wallet). At sentencing, the trial judge commented that the evidence of guilt "is overwhelming . . . ." Resp. Ex. B, Transcript of the Sentencing Proceeding at 1217.

To make a showing of actual innocence, Petitioner must show "that it is more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt." Schlup v. Delo, 513 U.S. 298, 327 (1995). In assessing the adequacy of a petitioner's showing, the Court stated:

> The meaning of actual innocence . . . does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty. It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do. Thus, a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.

<u>Id</u>. at 329; <u>see</u> <u>also</u> <u>Sibley v. Culliver</u>, 377 F.3d 1196, 1205 (11th Cir. 2004) (stating that "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence") (citations omitted).

This Court finds that Petitioner has not made a showing of actual innocence. At the trial, neither the State nor the defense presented DNA evidence. Thus, Petitioner has produced new reliable evidence (Dr. Sinha's DNA reports) that was not presented at trial. However, Petitioner has failed to demonstrate that it is more likely than not that no juror, acting reasonably, would have found him guilty beyond a reasonable doubt in light of the new evidence.

Petitioner describes this case as "clearly a very close case," <u>see</u> Petition, Statement of Facts at 3;[12] however, even if the DNA evidence establishes that a third person wore the ski mask, there is overwhelming evidence that Scarlett was the ski-masked robber. Further, DNA evidence showing Scarlett as a minor donor and another male as a major donor would be consistent with Robbins' testimony that the ski mask belonged to Robbins' roommate. The DNA evidence does not exonerate Petitioner, but merely reflects that other(s)

---

[12] Petitioner emphasizes the fact that the victim initially identified the ski-masked robber as a white male when Scarlett is a black male. <u>See</u> Petition, Statement of Facts at 4. However, the record establishes that, while Scarlett is generally identified on his prison record as being black, "when you see Mr. Scarlett, he doesn't look like the average black North American. He's very, very light skinned." Pet. Ex. D at 28.

wore the ski mask, which is consistent with the fact that the ski mask did not belong to Scarlett and was not in his possession at all times either before or after the robbery.[13]  The Court finds Petitioner's allegations of actual innocence to be insufficient.

Petitioner has not shown a justifiable reason why the dictates of the one-year limitations period should not be imposed upon him. For this reason, this Court will dismiss this case with prejudice pursuant to 28 U.S.C. § 2244(d).

## D. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. §2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must

---

[13] Officer Krivensky testified that, after the robbery, he found the ski mask inside the get-away car.  See Tr. at 365.

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  See Slack, 529 U.S. at 484.  However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Id.

Upon consideration of the record as a whole, this Court will grant a certificate of appealability with respect to the following issue:  whether the federal Petition is timely under 28 U.S.C. § 2244(d)(1)(D), which permits filing within one year from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    Respondents' request to dismiss the action with prejudice as untimely, contained in their Response (Doc. #22), is **GRANTED**.

2.    This case is **DISMISSED** with prejudice.

3.    The Clerk of the Court shall enter judgment dismissing this case with prejudice.

4.    The Clerk of the Court shall close this case.

5. The Court grants a certificate of appealability with respect to the following issue:  whether the federal Petition is timely under 28 U.S.C. § 2244(d)(1)(D), which permits filing within one year from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

**DONE AND ORDERED** at Jacksonville, Florida, this 16th day of February, 2010.

MARCIA MORALES HOWARD
United States District Judge

sc 2/16
c:
Counsel of Record